Opinion
MOSK, J.
We granted review in this cause in order to settle an important issue arising under what is popularly, and singularly, known as the “Three *1075 Strikes” law, a pair of statutes that are identical in part pertinent here, one enacted from a bill introduced in the Legislature (Stats. 1994, ch. 12, § 1, pp. 71-75, adding Pen. Code, § 667, subds. (b)-(i)), the other enacted from an initiative measure presented to the people (Prop. 184, § 1, as approved by voters, Gen. Elec. (Nov. 8, 1994), adding Pen. Code, § 1170.12).
Notwithstanding any other law or provision of law, the Three Strikes law governs when a defendant is convicted of a felony or “strike” of any kind, and was previously convicted of one or more felonies or strikes defined as serious or violent. (Pen. Code, §§ 667, subd. (c), 1170.12, subd. (a); see id., §§ 667, subds. (d), (e), (f), 1170.12, subds. (b), (c), (d).)
The Three Strikes law provides that, if a defendant is convicted of a felony of any kind and was previously convicted of a single felony defined as serious or violent—if he has two strikes—he must be sentenced to a term of imprisonment as follows: If he would otherwise have been sentenced to a “determinate term” (Pen. Code, §§ 667, subd. (e)(1), 1170.12, subd. (c)(1)), which is of fixed duration (see generally id., § 1170), he must be sentenced to a “determinate term” that is “twice” as long {id., §§ 667, subd. (e)(1), 1170.12, subd. (c)(1)). By contrast, if he would otherwise have been sentenced to an “indeterminate term” {id., §§ 667, subd. (e)(1), 1170.12, subd. (c)(1)), which is not of fixed duration (see generally id., § 1168), with a “minimum term,” he must be sentenced to an indeterminate term with a minimum term that is “twice” as long {id., §§ 667, subd. (e)(1), 1170.12, subd. (c)(1)).
Likewise, the Three Strikes law provides that, if a defendant is convicted of a felony of any kind and was previously convicted of at least two felonies defined as serious or violent—if he has three strikes—he must be sentenced to an “indeterminate term of life imprisonment with a minimum term” calculated in accordance with certain specified formulas, but no less than 25 years. (Pen. Code, §§ 667, subd. (e)(2)(A), 1170.12, subd. (c)(2)(A).)
Lastly, the Three Strikes law declares that, if a defendant is convicted of a felony of any kind, and was previously convicted of one or more felonies defined as serious or violent—if he has either two or three strikes—he is subject to certain rules. (Pen. Code, §§ 667, subd. (c), 1170.12, subd. (a).) Among which is the following: “The total amount of credits awarded” to a defendant with either two or three strikes for conduct in prison “pursuant to Article 2.5 (commencing with Section 2930) of Chapter 7 of Title 1 of Part 3” of the Penal Code (hereafter article 2.5)—which authorizes such credits for use only against determinate terms of imprisonment (see Pen. Code, § 2930 et seq.; see generally id., § 1170; see also In re Monigold (1983) 139 *1076 Cal.App.3d 485, 488-494 [188 Cal.Rptr. 698]), but not against indeterminate terms—“shall not exceed one-fifth of the total term of imprisonment imposed” (Pen. Code, §§ 667, subd. (c)(5), 1170.12, subd. (a)(5)).
The question that we address on review is: Does the Three Strikes law authorize or allow a defendant with three strikes to be awarded article 2.5 prison conduct credits for use against his mandatory indeterminate term of life imprisonment?
The answer that we must give is: No.
I
Inmate Adrian Ben Cervera submitted a petition for writ of habeas corpus to Division Three of the Fourth Appellate District of the Court of Appeal in conjunction with an appeal, then pending, that he had taken from a judgment of conviction rendered by the Superior Court of Orange County.[1] In pertinent part, Cervera alleged facts to the following effect: He was convicted of a felony, specifically, second degree robbery (which happens to be serious), under various circumstances triggering enhancement of sentence, and had previously been convicted of two serious felonies, otherwise unidentified; as a defendant with three strikes, he was sentenced to a mandatory indeterminate term of life imprisonment with a minimum term of 25 years for second degree robbery; he was also sentenced to a determinate term of 12 years for the sentence-enhancing circumstances; prior to his commitment to prison, the California Department of Corrections (hereafter CDC) had interpreted the Three Strikes law to authorize or allow a defendant with three strikes to be awarded article 2.5 prison conduct credits against his mandatory indeterminate term of life imprisonment, as well as against any qualifying determinate term that happens to be imposed, subject only to the specified limitation to one-fifth of the total term, and proceeded to implement its interpretation; but shortly after his commitment, following People v. Stofle (1996) 45 Cal.App.4th 417, 420-421 [52 Cal.Rptr.2d 829] (hereafter Stofle), CDC interpreted the Three Strikes law anew to allow a defendant with three strikes to be awarded such credits only against any qualifying determinate term that happens to be imposed, but not against his mandatory indeterminate term of life imprisonment, and proceeded to implement its new interpretation. He claimed thát CDC’s former interpretation of the Three Strikes law was sound and its present interpretation was not, and on that basis prayed for relief including an order directing it to depart from its present implementation of the Three Strikes law and return to its former implementation.
*1077 By order, the Court of Appeal summarily denied Cervera’s habeas corpus petition, citing Stofle in support.
Cervera submitted a petition for review. We granted his application. At the same time, we transferred the matter to the Court of Appeal with directions to vacate its order summarily denying his habeas corpus petition and to issue an order to show cause to the Director of Corrections.
Complying with our directions, the Court of Appeal vacated the indicated order of summary denial and issued the indicated order to show cause.
On behalf of the Director of Corrections, the acting warden of the prison to which Cervera had been committed submitted a return. He admitted the substance of the facts, recounted above, that Cervera had alleged. But he denied Cervera’s claim challenging CDC’s present interpretation of the Three Strikes law, and consequently opposed his prayer for relief against its present implementation.
Cervera submitted a traverse, styled a “denial,” in which, among other things, he again alleged the facts, recounted above, that he had alleged originally.
Following oral argument, the Court of Appeal, through a unanimous opinion, rendered judgment denying Cervera’s habeas corpus petition.
Cervera again submitted a petition for review. We again granted his application. We now affirm.
H
The question that we address on review concerns the meaning of the Three Strikes law, specifically, whether it authorizes or allows a defendant with three strikes to be awarded article 2.5 prison conduct credits against his mandatory indeterminate term of life imprisonment.
To determine the meaning of a statute, we seek to discern the sense of its language, in full context, in light of its purpose. (See, e.g., West Pico Furniture Co. v. Pacific Finance Loans (1970) 2 Cal.3d 594, 608 [86 Cal.Rptr. 793, 469 P.2d 665].)
The purpose of the Three Strikes law is manifest. It is to impose longer terms of imprisonment on defendants with two strikes and generally still longer terms on defendants with three strikes. (See, e.g., People v. Garcia (1999) 20 Cal.4th 490, 501 [85 Cal.Rptr.2d 280, 976 P.2d 831].)
*1078 Also manifest is the sense of the language of the Three Strikes law in full context.
As noted, the Three Strikes law declares that “[t]he total amount of credits awarded” to a defendant with either two or three strikes for conduct in prison “pursuant to Article 2.5 (commencing with Section 2930) of Chapter 7 of Title 1 of Part 3” of the Penal Code—which authorizes such credits for use only against determinate terms of imprisonment, but not against indeterminate terms—“shall not exceed one-fifth of the total term of imprisonment imposed . . . .” (Pen. Code, §§ 667, subd. (c)(5), 1170.12, subd. (a)(5).)
The Three Strikes law’s declaration does not itself authorize article 2.5 prison conduct credits for use against indeterminate terms of imprisonment—or indeed against any terms of imprisonment. Rather, it limits the award of such credits as authorized by article 2.5. Hence, it must be understood simply to accept article 2.5’s authorization of such credits against determinate terms only, but not to extend it against indeterminate terms as well. In this respect, it is unlike other provisions of other laws, which indeed extend article 2.5’s authorization of such credits to indeterminate terms, specifically, to such terms’ minimum terms. (See, e.g., Pen. Code, §§ 217.1, subd. (b), 667.51, subd. (d), 667.61, subd. (j), 667.7, subd. (a)(1), 667.71, subd. (b), 667.75.) Illustrative is the requirement, which antedates the Three Strikes law (see Stats. 1983, ch. 683, § 1, p. 2645), to the effect that a defendant convicted of the felony of the attempted murder of a public official must be sentenced to an indeterminate term of life imprisonment with a specified minimum term: “Article 2.5 (commencing with Section 2930) of Chapter 7 of Title 1 of Part 3” of the Penal Code “shall apply ■ to reduce” the specified “minimum term.” (Pen. Code, § 217.1, subd. (b), italics added.)
It is true that the Three Strikes law’s declaration does not prohibit article 2.5 prison conduct credits for use against indeterminate terms of imprisonment. In this respect, it is unlike other provisions of other laws. (See Pen. Code, §§ 190, subd. (e), 664, subd. (f).) Illustrative is the requirement, which antedates the Three Strikes law (see Stats. 1987, ch. 1006, § 1, p. 3368; Stats. 1993, ch. 609, § 3, p. 3266), to the effect that a defendant convicted of the felony of murder must be sentenced to an indeterminate term of life imprisonment with different specified minimum terms depending on different specified circumstances: “Article 2.5 (commencing with Section 2930) of Chapter 7 of Title 1 of Part 3” of the Penal Code “shall not apply to reduce any” such specified “minimum term.” (Pen. Code, § 190, subd. (e), italics added.)
But the fact that the Three Strikes law’s declaration does not prohibit article 2.5 prison conduct credits for use against indeterminate terms of *1079 imprisonment matters not. What matters, rather, is that it does not authorize such credits for use against such terms. Credits of any sort are available only if, and to the extent that, they are authorized. In the absence of authorization for use against indeterminate terms, article 2.5 prison conduct credits are simply unavailable.
It is true as well that certain documents within the history of the bill and the initiative measure that would each become the Three Strikes law summarized its declaration by paraphrasing the limitation that it imposed on article 2.5 prison conduct credits without taking into account article 2.5’s authorization of such credits against determinate terms only. For example, it was stated that the Three Strikes law would “require that a person who has been convicted previously of one or more serious or violent felonies may not earn credits to reduce the time he . . . spends in prison for the new offense, by more than one-fifth . . . .” (Ballot Pamp., Gen. Elec. (Nov. 8, 1994) analysis of Prop. 184 by Legis. Analyst, p. 33 [initiative measure]; accord, Legis. Analyst Elizabeth G. Hill, Joint Legis. Budget Com., letter to Atty. Gen. Daniel E. Lungren, Sept. 8, 1993, p. 2 [initiative measure]; Sen. Com. on Judiciary, Analysis of Assem. Bill No. 971 (1993-1994 Reg. Sess.) as amended Jan. 26, 1994, p. 1 [bill]; Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Assem. Bill No. 971 (1993-1994 Reg. Sess.) as amended Jan. 26, 1994, pp. 1, 2 [bill]; Ballot Pamp., Gen. Elec. (Nov. 8, 1994) argument in favor of Prop. 184, p. 36 [initiative measure].)
Not all of the documents within the Three Strikes law’s legislative and initiative history overlooked the fact that article 2.5 authorizes prison conduct credits against determinate terms of imprisonment only. For example, it was implied on a chart that the Three Strikes law would not authorize or allow a defendant with three strikes to be awarded article 2.5 prison conduct credits against his mandatory indeterminate term of life imprisonment when it was represented thereon that the minimum term of not less than 25 years would remain not less than 25 years even if one “[a]ssumes” that such a defendant “earns maximum credits” of this sort. (Ballot Pamp., Gen. Elec. (Nov. 8, 1994) analysis of Prop. 184 by Legis. Analyst, p. 34, fig. 1 [initiative measure]; see also Petn., Proposed Initiative Stat. relating to Sentence Enhancement and Repeat Offenders, pp. 1, 2 [initiative measure]; Ballot Pamp., Gen. Elec. (Nov. 8, 1994) Official Title and Summary of Prop. 184 by Atty. Gen., p. 32 [initiative measure].) The minimum term of not less than 25 years would remain not less than 25 years only if the maximum credits were zero.
But, with that said, it was the Three Strikes law that was enacted, not any of the documents within its legislative or initiative history. A statute, of *1080 course, must prevail over any summary. Were it not so, no statute could ever be enacted whole and entire. For every summary, by definition, is incomplete. A summary is a model of the body of a statute, well executed or not as the case may be. It is not a procrustean bed for the stretching or lopping off of its limbs. The summary must yield to the statute, not the statute to the summary.
It is also true that CDC had formerly interpreted the Three Strikes law to authorize or allow a defendant with three strikes to be awarded article 2.5 prison conduct credits against his mandatory indeterminate term of life imprisonment, as well as against any determinate term, subject only to the specified limitation to one-fifth of the total term.
But, having exercised our independent judgment, and having given all appropriate deference (Yamaha Corp. of America v. State Bd. of Equalization (1998) 19 Cal.4th 1, 8 [78 Cal.Rptr.2d 1, 960 P.2d 1031]; accord, id. atp. 16 (conc. opn. of Mosk, J.)), we find CDC’s former interpretation of the Three Strikes law incorrect, and reject it accordingly.
Therefore, in view of its purpose, which is to impose longer terms of imprisonment on defendants with two strikes and generally still longer terms on defendants with three strikes, and in view of its language in full context, which sets up a mechanism for the effectuation of its purpose, we conclude, like the court in Stofle before us, that the Three Strikes law does not authorize or allow a defendant with three strikes to be awarded article 2.5 prison conduct credits against his mandatory indeterminate term of life imprisonment.
Opposing our conclusion, Cervera argues that the Three Strikes law does in fact authorize or allow a defendant with three strikes to be awarded article 2.5 prison conduct credits against his mandatory indeterminate term of life imprisonment. For the reasons already stated, we are not persuaded.
Cervera then argues that it is at least ambiguous whether the Three Strikes law authorizes or allows a defendant with three strikes to be awarded article 2.5 prison conduct credits against his mandatory indeterminate term of life imprisonment, and that this asserted ambiguity should be resolved in his favor through the operation of canons of statutory construction such as the “policy” that a “statute” should be interpreted “as favorably to the defendant as its language and the circumstances of its application may reasonably permit.” (Keeler v. Superior Court (1970) 2 Cal.3d 619, 631 [87 Cal.Rptr.
*1081 481, 470 P.2d 617, 40 A.L.R.3d 420]; accord, People v. Robles (2000) 23 Cal.4th 1106, 1115 [99 Cal.Rptr.2d 120, 5 P.3d 176].) Again, we are not persuaded. That is because we discern no ambiguity on which they might operate. In particular, no ambiguity arises from any preenactment document with a summary paraphrasing the Three Strikes law’s limitation on article 2.5 prison conduct credits without taking into account article 2.5’s authorization of such credits against determinate terms only. A summary of this kind does not make the Three Strikes law unclear, but merely reveals itself to be at best incomplete. Neither does any ambiguity arise from the fact that the Three Strikes law does not prohibit article 2.5 prison conduct credits for use against indeterminate terms. The fact that the Three Strikes law does not authorize such credits is clear, and sufficient.[2]
Cervera finally argues in substance that, even if the Three Strikes law does not authorize or allow a defendant with three strikes to be awarded article 2.5 prison conduct credits against his mandatory indeterminate term of life imprisonment, it authorizes or allows him to be awarded such credits against such indeterminate term’s minimum term, which he asserts is itself a determinate term. Yet again, we are not persuaded. The Three Strikes law does not so authorize or allow. Moreover, a minimum term is not a determinate term. A “determinate” term is of fixed duration (see generally Pen. Code, § 1170), specifying as it does both an upper limit and a lower limit, *1082 which is by definition the same. A “minimum” term, by contrast, is not of fixed duration, specifying only a lower limit.[3]
We recognize that a defendant with three strikes would have an incentive to behave well if the Three Strikes law authorized or allowed him to be awarded article 2.5 prison conduct credits against his mandatory indeterminate term of life imprisonment—that is, to reduce his indeterminate term’s minimum term. But we cannot ignore the fact that he has such an incentive even though it does not—that is, to demonstrate his suitability for release on parole as soon as he has served his indeterminate term’s minimum term (see In re Monigold, supra, 139 Cal.App.3d at p. 491). Whether an incentive of this sort is adequate or inadequate is not for us to say. In any event, it has no bearing on whether the Three Strikes law authorizes or allows such a defendant to be awarded such credits against such an indeterminate term.
Ill
Turning to the case at bar, we believe that the Court of Appeal did not err by denying Cervera’s petition for writ of habeas corpus. Cervera’s claim challenging CDC’s present interpretation of the Three Strikes law as allowing a defendant with three strikes to be awarded article 2.5 prison conduct credits only against any qualifying determinate term of imprisonment that happens to be imposed, but not against his mandatory indeterminate term of life imprisonment, is without merit. For, as we have explained, the Three Strikes law in fact does not authorize or allow such a defendant to *1083 be awarded such credits against such an indeterminate term. Hence, Cervera’s prayer for relief against CDC’s present implementation of the Three Strikes law falls as unsupported.
IV
For the reasons stated above, we conclude that we must affirm the judgment of the Court of Appeal.
It is so ordered.
George, C. J., Kennard, J., Baxter, J., Chin, J., and Brown, J., concurred.

The Court of Appeal, we are informed, subsequently disposed of Cervera’s appeal by affirming the judgment.

We note in passing that Cervera does not argue, as he had argued in the Court of Appeal, that the asserted ambiguity whether the Three Strikes law authorizes or allows a defendant with three strikes to be awarded article 2.5 prison conduct credits against his mandatory indeterminate term of life imprisonment should be resolved in his favor through the application of the canon of statutory construction that counsels against an interpretation “making some words surplusage” (Watkins v. Real Estate Commissioner (1960) 182 Cal.App.2d 397, 400 [6 .Cal.Rptr. 191]). The argument went substantially as follows: “The Three Strikes law implies that a defendant with three strikes as well as a defendant with two strikes is eligible for an award of article 2.5 prison conduct credits. Unless it were construed to authorize or allow such a defendant to be awarded such credits against his mandatory indeterminate term of life imprisonment, it would be empty in its implication. That is because his indeterminate term of life imprisonment is indeed mandatory.” The reason that Cervera does not present an argument of this kind seems to us to be plain: Any such argument would fail. Even without the construction of the Three Strikes law contended for, a defendant with three strikes is indeed eligible for an award of article 2.5 prison conduct credits, albeit only against any qualifying determinate term that happens to be imposed. It is true that a given defendant with three strikes might be ineligible for an award of such credits, as when the only term imposed is the mandatory indeterminate term of life imprisonment. But it is also true that a given defendant with two strikes might himself be ineligible, as when the only term imposed is itself an indeterminate term. The Three Strikes law does in fact imply that a defendant with two strikes and a defendant with three strikes are each eligible for an award of article 2.5 prison conduct credits. But it does not imply, still less state, that each is eligible for an award of such credits against any term, whether determinate or indeterminate.

Cervera requests us to take judicial notice of how CDC applies Penal Code section 12022.53, subdivision (i). We hereby do so. As a “reviewing court” (Evid. Code, § 459, subd. (a)), we may judicially notice “[f]acts . . . that are not reasonably subject to dispute and are capable of immediate and accurate determination by resort to sources of reasonably indisputable accuracy” (id., § 452, subd. (h))—which include the object of the request here. Penal Code section 12022.53 generally provides for enhancement of sentence for a defendant convicted of any of certain specified felonies, in the amount of a determinate term of imprisonment for 10 years, a determinate term of imprisonment for 20 years, or an indeterminate term of life imprisonment with a minimum term of 25 years, each triggered by specified circumstances involving personal use of a firearm. Penal Code section 12022.53, subdivision (i), states in pertinent part: “The total amount of credits awarded pursuant to Article 2.5 (commencing with Section 2930) of Chapter 7 of Title 1 of Part 3” of the Penal Code “shall not exceed 15 percent of the total term of imprisonment imposed on a defendant upon whom a sentence is imposed pursuant to this section.” CDC applies the foregoing to authorize or allow some such defendants to be awarded article 2.5 prison conduct credits against the indeterminate term of Ufe imprisonment thereunder, specifically, against such indeterminate term’s minimum term, as well as against any qualifying determinate term that happens to be imposed, subject only to the specified Umitation to 15 percent of the total term.
Our taking of judicial notice of how CDC applies Penal Code section 12022.53, subdivision (i), benefits Cervera not at all. To the extent that CDC’s practice in this regard is inconsistent with the analysis set out in the text, it does not undermine that analysis, but is rather undermined thereby.